```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION

REBECCA A. MCPHERSON,           }
                                }
     Plaintiff,                 }
                                }         CIVIL ACTION NO.
v.                              }         04-AR-3531-S
                                }
SMITHKLINE BEECHAM              }
CORPORATION, d/b/a              }
GlaxoSmithKline,                }
                                }
     Defendant.                 }
```

**MEMORANDUM OPINION**

The court has before it the motion for summary judgment of defendant, Smithkline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK"). Plaintiff, Rebecca A. McPherson ("McPherson"), sues her employer, GSK, for retaliation, invoking Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. For the reasons to follow, GSK's motion is due to be granted.

### *Facts*[1]

McPherson worked as a pharmaceutical sales representative for GSK from 1988 until 1998, and again from May 2000 until the present. Beginning in March 2002, McPherson and Julie Mattson ("Mattson"), another sales rep, entered into a job share

---

[1] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In assessing whether the movant has met its burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). In accordance with this standard, this statement of facts includes both undisputed facts and, where there is a dispute, the facts according to the non-movant's evidence, and the legitimate inferences therefrom.

arrangement whereby they covered the same geographical area, but worked at different times so that both could be part-time employees.  Also in March 2002, Eugene Maitrejean ("Maitrejean"), became McPherson's direct supervisor.  GSK terminated Mattson in September 2002, and hired Jill Trowbridge ("Trowbridge"), into the opening, thereby preserving the job share arrangement.

Soon after March 2002, McPherson, a married mother of three, alleges that Maitrejean began to sexually harass her.  She reported Maitrejean's conduct to GSK's human resources department on July 31, 2003.  GSK investigated McPherson's complaint, and as a result the company issued a disciplinary memorandum to Maitrejean on August 26, 2003.

On September 30, 2003, McPherson attended a meeting with Maitrejean and his direct supervisor at the time, Chris Webb ("Webb").  During that meeting, Maitrejean criticized McPherson's performance.  Maitrejean's counseling embarrassed McPherson, and she believes that he intentionally made her appear to be incompetent.

On October 27, 2003, Jack Planchard ("Planchard"), GSK's Regional Vice President, notified McPherson in writing that her job share arrangement would end on December 1, 2003, and gave her the options to (1) pursue a part-time position in another territory, (2) return to a full-time position, or (3) resign from GSK.  Although McPherson preferred her part-time arrangement because it

afforded her more time with her family, she chose to stay on with GSK in a full-time position. Planchard alone made the decision to collapse the job share; Maitrejean's only involvement was to furnish sales data requested by Planchard.

McPherson interviewed with John Jordan ("Jordan"), another GSK district sales manager, for an open job share position on January 5, 2004. At that meeting, Jordan asked McPherson to furnish her recent sales figures and rankings, information that should have been available to her. In response, she provided only her sales information from August 1, 2003, forward. Jordan contacted Maitrejean to inquire about McPherson's performance while under Maitrejean's supervision. Maitrejean made no negative comments regarding McPherson, but told Jordan that he would prefer that she furnish the sales information. Jordan decided not to hire McPherson because he was not satisfied with the data she provided. Jordan had no knowledge of McPherson's accusations against Maitrejean when he made that decision.

On December 28, 2004, McPherson filed this action. Prior to that time she had served as what GSK calls its "Wellburtin XL Champion." GSK designates product "champions" on a temporary basis with the expectation that the champion will serve as an expert on the product for a certain period of time. A champion performs additional research on the product and may be called upon to give presentations or answer questions regarding the product, but does

not receive any additional compensation, benefits, or a change in job title.  Upon learning of this lawsuit, Kevin Floyd ("Floyd"), McPherson's new supervisor, removed her Wellbutrin XL designation saying that it was so that she would be able to focus her time and energy on her lawsuit and not as an act of retaliation.  She lost no pay or other benefits as a result.

### *Analysis*

To establish a *prima facie* case for retaliation under Title VII, McPherson "must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998).  Under the *McDonnell Douglas* framework, the burden shifts to GSK to articulate a legitimate, nondiscriminatory basis for its employment actions only if McPherson produces evidence supporting each element of her *prima facie* case.  If GSK makes this showing, the onus is on McPherson to show that GSK's explanation is a pretext.  GSK does not deny that McPherson engaged in protected expression when she reported Maitrejean's alleged behavior to the human resources department. Whether GSK's responses to McPherson's protected activity amount to adverse employment actions and whether they are causally related to McPherson's activity are the questions that must be answered in

4

order to determine whether her claim survives summary judgment. The alleged retaliatory acts will be addressed in turn.

First, McPherson claims that Maitrejean retaliated against her by criticizing her performance during the September 30, 2003, meeting with Webb. She does not demonstrate, however, that any negative consequences flowed from Maitrejean's comments. Maitrejean's criticism does not run afoul of Title VII when it has no tangible impact on McPherson's employment. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238-42 (11th Cir. 2001). McPherson fails to carry her *prima facie* burden with respect to this alleged act of retaliation. Every employee who works for an employer for a considerable period of time is the recipient of some criticism, constructive or otherwise. Criticism of performance alone is not the kind of adverse employment action that Title VII was designed to address.

Second, McPherson claims that the decision to eliminate her job share arrangement and reassign her to a full-time position was retaliatory. In proving the "serious and material change" to an employee's conditions of employment that makes it actionable under Title VII, the Eleventh Circuit has held that "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Davis*, 245 F.3d at 1239. The sticking point is not the materiality

of the decision to collapse McPherson's job share, but its adversity. The court acknowledges that this area of Eleventh Circuit law is underdeveloped, because the factual predicate in which an employee complains of what is ostensibly a promotion is exceedingly rare. GSK urges the court to hold that the elimination of McPherson's job share and her subsequent reassignment cannot, as a matter of law, be adverse because the restructuring did not "involve lesser pay, responsibilities, or prestige." *Doe v. Dekalb County Sch. District*, 145 F.3d 1441, 1452 (11th Cir. 1998). GSK's interpretation utilizes a reasonable person standard, but ignores the attendant circumstances.[2] While it is true that a reasonable person would *generally* view the transition from part-time to full-time--with the concomitant increase in pay and responsibilities--as a promotion, this court will not hold that a reasonable person *with three young children* could not view a transfer to full-time status to be adverse. Whether a woman with three young children has protection against Title VII retaliation that a woman with no children would have under identical circumstances except for parental obligations is a question this court does not have to deal with in this case. McPherson is not merely asserting a subjective

---

[2] GSK also mischaracterizes the holding in *Doe*. While the Eleventh Circuit specifically included transfers involving reduced "pay, responsibilities, or prestige" in the categories of discriminatory conduct that would "still be 'adverse'" under an objective standard, it never held that an action could *only* be adverse if it impacted pay, responsibilities, or prestige. *See Doe*, 145 F.3d at 1452 (citing "transfers that involve arduous travel or that impede an employee's professional growth or advancement" as additional categories of adverse employment actions).

preference for her former arrangement.  Whether it is objectively reasonable for a mother of three to prefer to remain in her part-time arrangement so that she can be more actively involved in her children's lives is, in this court's opinion, a jury question. Title VII does not allow an employer to make such a significant lifestyle decision for its employees, that is, if its intent is to retaliate for the employees' protected speech.

Although McPherson may have presented a jury question as to whether the collapse of her job share was adverse, she has not linked the possibly adverse action to the complaint she made about Maitrejean to human resources.  No evidence in the record indicates that Maitrejean played any meaningful role in the decision to eliminate the job share,[3] or that the decisionmaker, Planchard, harbored any discriminatory animus toward McPherson.  McPherson asks the court to infer causation solely from the temporal proximity of Planchard's decision to collapse the job share on or around October 27, 2003, and the disciplining of Maitrejean, McPherson's alleged harasser, on August 26, 2003.  However, it is not the protected expression and an entirely appropriate reaction to it by the employer that must be causally linked, but the protected expression and some employer action in retaliation to it. The time that elapsed between the protected act and the arguably

---

[3] McPherson speculated in her deposition that Maitrejean was involved in the decision, but Maitrejean testified that he merely provided sales figures to Planchard, and that it was Planchard's idea that GSK collapse the job share.

7

adverse employment decision was just under three months. McPherson complained to human resources on July 31, 2003. A three-month time lapse is not the kind of "very close" temporal proximity that supports an inference of causation. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 1511 (2001) (citing approvingly *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997), which held a three-month period insufficient; and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992), which held a four-month delay insufficient); *Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (holding a three and one-half month period insufficient). Without any other evidence of causation, summary judgment is due to be granted on McPherson's claim vis-á-vis the collapse of her job share.

Third, McPherson claims that Jordan refused to hire her into the new job share position in retaliation for her complaint against Maitrejean. GSK does not deny that the refusal to hire McPherson amounts to an adverse employment action, but argues that McPherson has not proven a causal link between the hiring decision and her protected speech, not only because of the absence of temporal proximity, but because the uncontroverted evidence in the record shows that Jordan had no knowledge of McPherson's complaint when he decided not to hire her. Uncontradicted evidence that a decisionmaker was unaware of a protected expression at the time of the decision ordinarily disproves causation. *See, e.g.*, *Gupta v.*

8

*Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000). However, the ignorance of the ultimate decisionmaker does not preclude liability if a biased subordinate corrupts the decisionmaking process. *See Anderson v. WBMG-42*, 253 F.3d 561, 566 (11th Cir. 2001); *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir. 1999); *Jones v. Gerwens*, 874 F.2d 1534, 1542 n.13 (11th Cir. 1989). While the court acknowledges that, in theory, a subordinate's biases could be imparted to his supervisor, McPherson has offered no evidence to support an inference that Maitrejean injected any measure of bias into this hiring decision. The uncontroverted record evidence shows that Maitrejean did not make any negative comments regarding McPherson when Jordan contacted him. McPherson clings to Maitrejean's statement that he would prefer for McPherson to furnish her own sales figures to Jordan, but her argument is not persuasive. Nothing in Maitrejean's preference not to be involved in the hiring process indicates any bias against McPherson, especially when Jordan's sworn testimony is that McPherson, herself, should have had access to the information requested. This factual predicate is a far cry from that of *Jones*, in which the allegedly biased subordinate specifically recommended to his supervisor that the plaintiff be suspended from work, and, instead, is comparable to *Ferrell v. Masland Carpets, Inc.*, 97 F. Supp. 2d 1114, 1126 (S.D. Ala. 2000), in which the subordinate's only involvement was to notify the decisionmaker of the plaintiff's

9

protected characteristic. Under the circumstances, no reasonable jury could infer a causal connection between McPherson's complaint and Jordan's much later decision not to hire her. McPherson has failed to carry her *prima facie* burden as it relates to the decision not to hire her into the new job share position.

Fourth, McPherson alleges that GSK retaliated against her when Floyd made the decision to remove her Welbutrin XL Champion designation. *Davis*, *supra*, addressed a similar designation, the "Officer in Charge" within a police unit, which did "not bring with it any increase in salary or benefits, or unique opportunities for advancement within the department," or "a material change in . . . regular work assignments." 245 F.3d at 1244. In holding that the removal of the Officer-in-Charge designation was not an adverse employment action, the Eleventh Circuit stated:

> In the vast majority of instances . . . an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection afforded by Congress in Title VII's anti-discrimination clause--especially where, as here, the work assignment at issue is only by definition temporary and does not affect the employee's permanent job title or classification.

*Id*. at 1245. McPherson has offered no evidence upon which a reasonable jury could distinguish the Wellbutrin XL Champion designation from the designation found not to constitute an adverse employment action in *Davis*. Summary judgment is due to be granted on McPherson's claim for retaliation as to this action by GSK.

GSK additionally asserts that the retaliation claim based on an alleged loss of prestige, whether or not it constituted an adverse employment action, is not before the court because the decision occurred after the filing of this lawsuit, and McPherson did not seek leave to amend her complaint under F.R.Civ.P. 15. Because McPherson's claim fails on its merits, a ruling on this procedural issue may not be essential to the court's decision. Nevertheless, the court agrees with GSK that the claim based on the Wellbutrin matter comes too late and is not properly before the court. *See Grain Traders, Inc. v. Citibank*, 160 F.3d 97, 105 (2d Cir. 1998). It is due to be dismissed for that reason if not because the decision was innocuous.

The court additionally finds that summary judgment is due to be granted on McPherson's claim to the extent that her *prima facie* case relies on the collective weight of the four allegedly retaliatory acts rather than on any single act.[4] The aggregate impact of the actions which McPherson has tentatively connected with her complaint against Maitrejean does not meet the threshold level of substantiality required for a Title VII claim of retaliation.

---

[4] Although she does not cite to *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir. 1998), in this context, McPherson's assertion in this respect appears to be based on *Wideman*'s holding and analysis.

*Conclusion*

In accordance with the foregoing, GSK's motion for summary judgment will be granted by separate order.

DONE this 17th day of April, 2006.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE